I warn you, Your Honor, it's Kirk Kennedy v. Appellant Connie Williams, who was a longstanding employee with the City of Las Vegas. This case presents what may be an interesting argument, or a novel issue anyway. The district court could not find any authority on the question of does filing a workers' comp claim, which is purely a creature of State law, is that somehow akin to a protected activity that could remotely have any implications under the ADA or even Title VII regarding retaliation, things of that type. Listen, may I ask you before you get there, if you could just real simply tell me what your theory is on the ADA and on Title VII. This case itself, okay, for her, it's an ADA claim. Unfortunately, Do you agree that there is no Title VII claim? I do, and the reason I put it in the lawsuit is that That's fine, that's fine. Okay, so now we're on ADA. I'll slow that up. Okay. ADA claim. Connie Williams has a disability. It's called a reactive airway disease. It's even acknowledged by the City. She's had it for several years. There's her disability. Okay. Now, talking about is workers' comp a protected activity, your question is should it be? Well, but what, first of all, just tell me, if you will, what the theory of recovery is. Is it retaliation? If so, for what? Is it discrimination? If so, on what basis? On the ADA discrimination claim, Ms. Williams has a diagnosed disability, reactive airway disease. The City had knowledge of that. She was qualified for her position. She's been, was employed with the City since 1985 until 2006. She suffered an adverse employment action related to her disability in the form of the City failing to reasonably accommodate that disability by leaving her in a certain unit. So she worked at the City jail, and she stayed in certain units where the inmates were housed, and in the units, the airways, the air vents. So your theory is that the adverse employment action was leaving her in Unit 2? Yes, 2, and then failing to transfer her immediately out of 2 into Unit 4, and then she subsequently had trouble in Unit 4. I know, as she had addressed and we had addressed below, she's had longstanding problems, but the problem with that is it exceeded the scope, the permissible scope of what we could go back to. She had problems with a Unit 5 for many years, and, of course, that's outside the scope of this lawsuit and outside the scope of her EEOC charge, which she drafted on her own and did not have the assistance of an attorney. I know it was a little bit confusing in her charge, because when you read her charge, the only box that's checked is retaliation. Yes, I understand that. I'm trying to figure out precisely what your theory is. So the ADA discrimination claim is there, and then the retaliation exists, ADA-based retaliation, and this is what Judge Sandoval was looking at down below, exists in the form of Ms. Williams' contention that they were retaliating against her because she had filed workers' comp claims, and the retaliation consisted of failing to immediately take her out of these departments when she was having all these reactions in her lungs and respiratory problems related to this reactive airway disease. So there's two claims, just to narrow the focus, and both predicated upon an EEOC charge of discrimination she filed in May of 2005, and I'd be the first to admit I've done several of those myself over the years. This was a poorly drafted one. And it is true that in the actual charge of discrimination, she only checked the box retaliation and the time period from February of 2005 and continuing. But if you the supporting documentation that I include in the excerpts of record, including on pages 14 and 15 of the excerpts, and the supporting docs that she's filed with the EEOC, she's talking all about her ADA claim. I don't know what happened. I've done those before. You actually sit down with an intake officer and they help you, especially  So it's there. Okay. One of the things you started with, so her retaliation claim is that they retaliated by not moving her because she had filed. Filed and prevailed on a state workers' comp claim. Workers' comp claim. Okay. So leaving aside the workers' comp issue and you just march through the ADA and what needs to be proven, what is the evidence of the causal link between the alleged adverse action and the retaliation other than some broad timing issue? I mean, do we have any evidence? Is there anybody say anything, do anything, think anything? I think it's the overall pattern when you look at the city failing to immediately take her out. But it did take her immediately out, didn't it? It took her out of two immediately upon the workers' compensation adjudication. And then when she complained about exposure in Unit 2, the city conducted an investigation by taking two air quality surveys, which turned up an okay air quality finding. So even if there were some inference of retaliation, wasn't it dissipated by the intervening action of the city? So what is the link? Well, when she had to go from Unit 2 to Unit 4, she had to utilize a shift bid procedure herself. She had to initiate it herself and remove herself from that department because the city did not take steps to remove her. In other words, transfer her over. But the city did take steps to find out if there were anything wrong with the air. Fair point. Fair point. And that's true. That is documented. It's in the record. So when the fact that she took a bid shift action, how does that inure negatively to the city? The fact that she had to, well, unfortunately, we're bringing in issues that I can't get into, which is that she sat in Unit 5 for years with this problem and the city never did anything to take her out. But, of course, it's beyond the scope of the suit. So it's essentially a pattern of conduct that she's endured since approximately 2001, which, of course, far exceeds the scope of the claim and the suit in this case. Her claim, regrettably, you know, I realize it's filed herself, was 04 and 5. Correct. Correct. And so in that limited time frame, it's our position that she had to take action on her own. She had to, which, you know, some would say, what's wrong with that? But she is an employee of the City of Las Vegas and the City of Las Vegas kept her in an environment and did not immediately take her out. And that's that's. No, but then they have this test and that turns out okay. And then she puts in her bid shift and she gets moved. So whether it's discrimination or retaliation, it seems that the sort of causation and also the animus seems to be missing here. I mean, it's like I can we can appreciate from reading this the agony that she's in. You can see that. But I'm just trying to fit it in a legal construct and I have I keep coming back if we if we take the claims one by one on, say, the retaliation, I have trouble on the causal link. So I guess one thing you're telling us is it's just the time period, correct? I'm going to rest on she had some issues with some supervisors, things of that type. But the focus is the timing, time frame. Timing is one issue that can be looked at on a retaliation claim. And it may be the only issue that I have in this case for Ms. Williams. And then on the discrimination, what is the evidence there? In this case, the ADA discrimination is that she, of course, had this disability. It's not disputed. And the city failed to reasonably accommodate her. And I guess that's a question of fact. I said, well, what steps should the city do beyond that? They did some testing of the air, things of that type. What else should they have done? And they should have done issue is whether they should have taken her out of that unit sooner, not allowed her to remain in there or take her totally out of that environment in the city jail. In this time frame, we're talking about moving in which units from two and four. I know, two to four. And then when she went from four out of the jail to neighborhood services, that was actually, it was part of a transfer of a lot of people. They finally got her out of there. She, unfortunately, she's had a consistent problem with this disease. She had this reactive airway disease everywhere she went in the city jail. I've been over there myself. I mean, it's all closed in air environment. And everywhere she went, she was having this problem. So she finally got out of there in late 2005. But it's narrow. What's the adverse action? The adverse action is the alleged failure to, of the city to promptly remove her from the environment. So that's really where we're coming from. And the causal link is one based on time. And that's what I'd have. On the discrimination itself, that it was because of her disability is just the same thing, basically. I think, yeah, the retaliation and the discrimination claim both center on, I think the facts sort of overlap in this case. It's not a situation where we don't have statements in the record from her supervisors, statements saying something derogatory to her about her disability. It's really the overall conduct of how she was treated in the city detention department that we're alleging was the discriminatory event that she had suffered. I just want to address, real quickly, the apparent lack of case law on the issue of whether workers' comp constitutes a protected activity. As I said in the beginning, it is indeed, obviously, a creature of state law. The distinction I would draw, there was a case cited below and by the city as well, a FedSup case from back east saying that a district court had ruled that an unemployment compensation claim is not a protected activity and tried to use that as an analogy. And I would draw a difference that unemployment insurance benefits are far different than workers' comp benefits. When you're dealing with workers' comp, you're dealing with an injury, a disability. Find ratings, disability ratings, all the things that go through that state administrative process, but you're dealing with a disability-based claim. You're dealing with work-related injuries. And I think that is a distinction. And what I'm actually asking the Court to do is, in the grand scheme of things, extend some protection for individuals who file under a state's workers' compensation laws. They file in a state statutory scheme, following everything. They have a disability. They're diagnosed with this injury. They get treatment. They get benefits. But if they suffer, basically, I'm asking this Court to rule that that could, under certain circumstances, be construed as a protected activity for an ADA-based claim. Because if the ADA is designed by Congress to protect those with disabilities and ensure their employers get reasonable accommodations, if I'm an employee and over here I have a workers' comp claim and I'm declared 10 percent full-body disabled, I'm disabled. The state, my employer, has an obligation to not only help me process that workers' comp claim, but also to provide me, if I'm still employed there, with a reasonable accommodation for that disability. I think there is a nexus that can be drawn between a state workers' comp claim and a disability-based claim under federal law. So Judge Sandoval, in my argument there, he's, you know, he pointed, well, what's the federal protected right? And this is not your typical retaliation claim that I've done. A state-law workers' comp claim is not a federal claim. But the body of it, the meat of it, is the same as what you're doing on an ADA claim. So what I'm asking this Court to do is to extend some protection for individuals who file a workers' comp claim, but not just for a broken arm or a wrist or something of that type. They have to have a disability. And if there's evidence of a documented disability, whether that's by a permanent partial disability award or something like that, then perhaps if that would be a disability that would invoke ADA-type protections. So I'm asking for the world here. And I may not get it, but I'm asking for it. And that's what we're here to do. And I thank you very much, and I reserve whatever I've got left. Thank you very much. Sotomayor. Thank you, Mr. Jerby. Thank you. May it please the Court. My name is Brad Jerby, representing the City of Las Vegas, the Respondent. I think your initial question, Judge, was right on point. I don't quite understand the theory myself, but I know what everybody's stuck with. Plain words have plain meaning. And in this case, the document that starts everything is the administrative remedy that has to be exhausted before you get to the Federal Court remedy. And the administrative remedy is a charge of discrimination document filed by Ms. Williams on the 20th of May, excuse me, 2005. It alleges some specific things. The retaliation box is the only box checked. When you go down to the portion that she fills in, when you get to number three, she talks only about retaliation. And she's locked into one more thing, the dates. She says it started on the 10th of February, 2005, and the latest incident was on the 7th of April, 2005, and she files it on the 20th of May, 2005. The inference I draw is between April 7th and May 20th, there was nothing more, if that was the latest incident. If that's the time period we're talking about, we're talking about the time that she's in unit number two only, and only for that limited period of time. According to the record, the way I pieced it together, she was transferred to unit two in August of 04, said that everything was going fine when she first got to unit two, and first began to have this recurring smell on the 10th of February, 2005. On the 23rd of February, we're talking about maybe two weeks here, the city goes in and starts air monitoring, twice, and finds on both occasions the levels in the jail are substantially below any federal standard that would cause alarm. Second, the city goes in and does a one-time only workman's comp settlement with Ms. Williams, agreeing to pay her three days and put back on the books vacation time that she had to spend for her illness. I don't see any retaliation that occurred during that period. But even before we get there, we have to talk about a protected activity under retaliation, and she can't show a protected activity. I think the district court evaluated the evidence properly. I think that this is an absolute kind of case that's ripe for summary judgment. I think it was appropriately granted, and I'll be glad to answer any questions that you have. Sotomayor. How about the discrimination charge? I don't think there is a discrimination charge, Judge. I think that the charge that she has, the one that was exhausted at the lower level was a retaliation charge. If she has a discrimination suit, she should have brought it then, she should have exhausted it then, and then she should go to federal court with it. If there is a discrimination, if this Court determines that there is some viable discrimination claim, she once again has to prove that she's a qualified person with a disability, and that she suffered an adverse employment action because of the disability. Let's assume that she's a qualified person with a disability. There is not a scintilla of evidence in the record that she suffered an adverse employment action. Not one. When she complained, we paid her money. When she complained, we monitored the error. And then eventually, she moved on her own to another unit, and if you read the record that was attached as part of our brief, you find that she starts in unit 5 and has problems there, and that's where the symptoms and the disease develops. When she moves to unit 2, it's okay for a while. Then again, the symptoms continue. Kennedy, they moved her request, right, to unit 2? From unit 5 to unit 2 was at our we moved her from 5 to 2, and she agreed. She moved from 2 to 4 at her request. Right. And when she gets to 4, the same thing happens. In the transcript that's attached, we talk about unit 7. That's the most severe challenge unit in the jails for the mentally ill people are and some very, very challenging inmates. And she said that's the worst. Then when we move her to neighborhood services, and I don't know if you've read the transcript on this or not, there's a portion in here where she talks about being moved out to a location on Stella Lake and Lake Mead. This is a brand new building just constructed by the city in the last five or six years. We call it an incubator center because we normally put small businesses in there to get them started. So if you want to start your own mom and pop shop, we'll put you out there, we'll nurture you, we'll incubate you, and then you'll go out and maybe open a shop somewhere else. She thinks the word incubator has something to do with germs. And she says in the transcript that I can't go to the incubator center because they incubate things out there. It's a brand new building. But that's not in the time frame of the complaint, is it? It's not in the time frame of the complaint, but it just gives you a flavor for where this entire thing has been. So in the snapshot that you've got, you've got a snapshot of time that I think you're limited to, February 10th to, excuse me, to April 7th. It's the Unit 2 period of time, and there's absolutely no adverse employment action. And the final point I'd like to make, too, is when we talk about reasonable accommodation, even the ADA says that you don't have to do something that causes the organization undue hardship. She has been everywhere in this organization that she could possibly be put. I can't think off the top of my head of another accommodation that could be made when you move somebody to a brand new building and completely out of the jail structure, and it's still not good enough. I think that the city showed good faith in February when she raised the complaint. We did the air monitoring. We paid her money. We honored her request when she wanted to move. I'll be glad to answer any questions you have. Okay, thank you. All right, Mr. Kennedy. All I would say is just to remind the court that in the excerpts of record, pages 13, 14, 15, and 16, that's her proper person EEOC complaint. And although it's a little difficult to read, it is in her handwriting. It does appear that at least her records and her intent was to assert an ADA type claim, even though in the body of the charge of discrimination, as Mr. Jerbik has pointed out, it limits it. My hands are tied, it just says retaliation. But when you look at the intent, it seems to cover not only a broader period of time, but also this issue of accommodation and whether the ADA applies. So viewing this, I know there's some case law that says you're limited to what's in the charge. But if I'm not mistaken, I believe you also can look at the totality of the charge itself. And when you look at all the documents she submitted to the EEOC, it's clear that her intent was to assert an ADA claim, at least in part in this matter. But other than that, I don't have anything else, unless you have any further questions. Thank you very much.  The court will stand in recess for the day.
judges: Hug, Rymer, McKeown